UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINZI KAYLENE ADAMS,<br><br>            Plaintiff,<br><br>     v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>            Defendant. | No.  2:24-cv-03198 TLN SCR<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381-1383f.  The action has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Local Rule 302(c)(15).  For the reasons set forth below, the undersigned recommends that Plaintiff's motion for summary judgment (ECF No. 11) be granted, Defendant's cross-motion for summary judgment (ECF No. 13) be denied, and the action be remanded to the Commissioner for further consideration consistent with this order.

**PROCEDURAL BACKGROUND**

Plaintiff applied for SSI benefits on October 8, 2021, alleging disability beginning October 24, 2017.  Administrative Record ("AR") 39.[1]  The claim was denied initially on March

---

[1] The AR is filed at ECF No. 9-9 (AR 1-855) and the new evidence submitted to the Appeals Council is filed at ECF No. 10-2 (AR 856-58).  The AR references are to the number in the lower

1

24, 2022, and upon reconsideration on November 2, 2022. *Id.* On July 25, 2023, administrative law judge ("ALJ") Matilda Surh presided over a hearing on Plaintiff's claim. Plaintiff appeared and testified at the hearing without the assistance of an attorney or other representative. *Id.* Heidi Paul, impartial vocational expert ("VE"), also testified. *See* AR 101-103.

On December 19, 2023, the ALJ issued an unfavorable decision, finding plaintiff not disabled under the Act. AR 12-24. Plaintiff requested review of the ALJ's decision on December 22, 2023. AR 5. On October 9, 2024, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner. AR 1-4.

## FACTUAL BACKGROUND

### I. Plaintiff's Testimony

Plaintiff was born in 1991 and was thirty years old when she applied for SSI in October 2021. AR 47. Plaintiff testified that she is not working, and a friend is helping her with bills. AR 73. She has lived alone in a converted garage for about two months and her rent is $300. *Id.* Plaintiff does crochet to raise money but has not started an online business because of the up-front costs. AR 74. Plaintiff last worked part-time at Target, but her hours were inconsistent. *Id.*

Plaintiff testified she is unable to work because she cannot sit or stand for a long time. AR 75. She can sit or stand 20 to 30 minutes before she needs to change position. AR 76. She lacks balance because of weakness and numbness in her right leg and drags her right foot because she is not able to lift that leg off the floor. AR 77-78. Plaintiff has tried gentle exercises, swimming, and physical therapy and has received injections that did not help. AR 79-80, 84. Plaintiff has since received nerve ablations and could "tell a slight difference." AR 85.

Plaintiff testified she does household chores because she does not have a choice, but rests afterwards and lays down. She sweeps and mops with a four-pronged cane in one hand. AR 81-82. She got the cane at Walgreens at the recommendation of her chiropractor and always has it when she leaves the house. AR 82. Showering is easier at her new place because it is a smaller space and she leans on the wall. AR 86. Tops are easier than bottoms when dressing. Socks are

right corner of the page, not the CM/ECF generated header. References to briefs are to the page number generated on the CM/ECF header.

1  harder and she typically wears sandals. She uses rolling chairs to help her get around. AR 86-87.
2  Plaintiff does not have access to her truck right now and is not driving. AR 92. She physically
3  cannot push the pedal to get it past 20 m.p.h. even when pushing her hand on her leg. AR 92-93.
4        On a typical day, Plaintiff wakes up and moves a bit at her doctor's recommendation. AR
5  88-89. She will crochet and sit as long as she can because she does not want to lose her pattern.
6  AR 89. She can sit 30 minutes at most, then must move. She tries to do crocheting during
7  business hours because she is trying to make it a business. However, she stops and rest for 30
8  minutes to an hour before she goes back to it. AR 90. Plaintiff takes half an opioid at bed (AR
9  79) and sometimes does not sleep until 2 or 4 in the morning because she is in a lot of pain. AR
10 90-91. Heat makes the pain worse, and ice numbs the pain for 10 minutes. AR 91.
11       Plaintiff said she is tired and worn out from the pain. AR 93-94. She is not an office-type
12 person because she has dyslexia and is bad with numbers. AR 94. She liked working at Target
13 and views herself as an organizer. AR 94-95. She has depression and first tried therapy in
14 elementary school when her parents were divorcing. AR 95. She tried medication but it didn't
15 help. *Id.* Her mental health symptoms worsened in college. *Id.*

## II. Vocational Expert Testimony

Heidi Paul, the impartial VE, testified that a hypothetical person of Plaintiff's same age, education, work history, and residual functioning capacity ("RFC") could work as a fundraiser II, survey worker, and informational clerk as generally performed in the national economy. AR 102. The VE testified that the same jobs, with no erosion in numbers, would be available to a hypothetical person with the added limitation of a sit/stand option with the ability to change position every 20 or 30 minutes while remaining on-task. AR 102-103. However, the added limitation of more than two additional, unscheduled 30-minute breaks to lie down in addition to customary, scheduled breaks would eliminate competitive employment. AR 103.

## STANDARD OF REVIEW

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the

Secretary as to any fact, if supported by substantial evidence, shall be conclusive[.]'" *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Desrosiers v. Secretary of HHS*, 846 F.2d 573, 576 (9th Cir. 1988); *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in the decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss.").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (quoting *Stout v. Commissioner*, 454 F.3d 1050, 1055 (9th Cir. 2006)).

/////

**RELEVANT LEGAL STANDARDS**

**I.     Five-Step Sequential Evaluation Process**

A claimant is "disabled" if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A); *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI).

The following summarizes the sequential evaluation here:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. § 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

*Id.*, § 416.920(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

*Id.*, § 416.920(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make her capable of performing her past work? If so, the claimant is not disabled. If not, proceed to step five.

*Id.*, § 416.920(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Id.*, § 416.920(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. § 416.912(a) ("In general, you have to prove to us that you are blind or disabled"); *Bowen*, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis,

the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012); *see also Bowen*, 482 U.S. at 146 n.5.

## THE ALJ'S DECISION

### I. Sequential Evaluation Process Findings

The ALJ made the following findings:

1. [Step 1] The claimant has not engaged in substantial gainful activity since October 8, 2021, the application date[].  AR 41.

2. [Step 2] The claimant has the following severe impairments: lumbar disc protrusion with spinal canal stenosis, and sacroiliitis[].  AR 41.

3. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]  AR 42.

4. [Preparation for Step 4] After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except with the following limitations: lift and carry 20 pounds occasionally and 10 pounds frequently; stand, walk and sit for walk [sic] for 6 hours in an 8-hour workday, needs sit/stand option with the ability to change position every 20-30 minutes, a cane is needed for all ambulation, occasionally climb ramps or stairs, no climbing ladders, ropes or scaffolds, no stooping, occasionally kneel, crouch and crawl; and should avoid concentrated exposure to extreme cold, wetness, unprotected heights, and dangerous machinery.  AR 43.

5. [Step 4] The claimant has no past relevant work.  AR 47.

6. [Preparation for Step 5] The claimant was born on April 1, 1991 and was 30 years old, which is defined as a younger individual age 18-49, on the date the application was filed.  AR 47.

7. [Preparation for Step 5] The claimant has at least a high school education.

8. [Preparation for Step 5] Transferability of job skills is not an issue because the claimant does not have past relevant work.  AR 47.

9. [Step 5] Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.  AR 47.

## DISCUSSION

Plaintiff raises three points of error: (1) the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's allegations of pain; (2) the ALJ failed to properly evaluate Plaintiff's well-documented mental impairments and limitations; and (3) the Appeals Council did

6

not properly evaluate the new and material evidence submitted by Plaintiff.  ECF No. 11 at 8.

### I. Subjective Symptom Testimony

#### A. Legal Standard

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis.  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (internal citations and quotation marks omitted).  The claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* at 1036 (quoting *Smolen v Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).  "Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged." Id.

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1282).  The Ninth Circuit has described the finding required as follows:

> [A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination.  To ensure that our review of the ALJ's credibility determination is meaningful, and that the claimant's testimony is not rejected arbitrarily, we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination.

*Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015).  "Ultimately, the 'clear and convincing' standard requires an ALJ to show his work . . . . The standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).  The clear and convincing standard is "not an easy requirement to meet" and the "most demanding requirement in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (citation omitted).

////

**B. Discussion**

The ALJ found Plaintiff's medically determinable impairments satisfied the first step of the analysis but determined at step two that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]"  AR 45.  Plaintiff argues the ALJ failed to provide clear and convincing reasons, supported by substantial evidence, for finding her subjective symptom testimony inconsistent with (1) the objective medical evidence; (2) her conservative treatment; and (3) her reported activities.  ECF No. 11 at 10-14.

**i. Consistency with Objective Medical Evidence**

The ALJ's reasons for discounting Plaintiff's testimony based on the diagnostic record are neither clear nor convincing.  The ALJ wrote Plaintiff's impairments are "not completely debilitating as alleged" and cited only a June 2023 MRI of the lumbar spine that "revealed central L5-S1 disc herniation lateralizing slightly to the left compressing left SI root origin."  AR 44 (citing AR 816).  This is "simply reciting the medical evidence in support of his or her [RFC] determination."  *See Brown-Hunter*, 806 F.3d at 489.  The ALJ does not explain how this MRI, which describes the herniation as a "central broad-based disc extrusion measuring 14.5 mm transversely by 6.5 mm in AP plane," AR 816, contradicts Plaintiff's testimony or informs the RFC assessment.  Defendant claims Plaintiff's other MRI results were normal or unremarkable, ECF No. 14 at 6, but the ALJ cited abnormal MRIs earlier in her decision.  *See* AR 44 (citing, *inter alia*, January 2023 MRI showing "moderate-sized broad-based central disc protrusion").

The ALJ's also relied on physical examination findings showing "normal range of motion, normal strength extremities, normal gait, and no distress."  AR 45 (citing AR 571, 575, 647, 663). However, two of the four record citations show Plaintiff in fact presented with "limited range of motion" and a gait "slowed and abnormal due to pain."  *See* AR 646-47, 663.  The other two citations, which are treatment notes by Dr. Gangupantula describing Plaintiff's gait as "normal," AR 571, 575, appear to be outliers, as the longitudinal treatment record otherwise shows regular abnormal physical examination findings.  *See, e.g.,* AR 380, 447, 553, 651-52, 832.  An ALJ may not cherry-pick aspects of the medical record and focus only on those aspects that fail to support a

finding of disability. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014). Accordingly, the ALJ erred in not providing clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's subjective symptom testimony based on objective medical evidence.

### ii. Symptom Improvement with Conservative Treatment

Plaintiff next argues the ALJ erred in characterizing as "conservative" the injections and other treatments she underwent to alleviate her pain. ECF No. 11 at 11-12. Defendant counters that although the ALJ found Plaintiff's treatment was conservative, she "primarily discounted her subjective complaints because of Plaintiff's significant improvement with treatment, not because of the nature of the treatment itself." ECF No. 14 at 6-7. The undersigned construes this argument as suggesting any error in the ALJ's characterization of the treatment as "conservative" was harmless because Plaintiff's symptoms improved with the treatment. Plaintiff counters on reply that the ALJ cherry-picked evidence that shows partial and temporary benefit with treatment and does not contradict her allegations of chronic and long-term pain. ECF No. 17 at 2-3.

In rejecting Plaintiff's symptom testimony, the ALJ wrote she "has not generally received the type of medical treatment one would expect for a totally disabled individual," as her "course of treatment since her alleged disability onset date has generally reflected a conservative approach." AR 45. This was error. While "[e]vidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment," *Smartt*, 53 F.4th at 500 (citing *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007)), the record shows that between 2020-2023, Plaintiff was prescribed opioids, received epidural steroid and bilateral lumbar medial branch block injections, and underwent a CornerLoc sacroiliac joint stabilization surgical procedure. *See* ECF No. 11 at 6 (listing record citations to all of Plaintiff's injections and procedures). These treatments are not conservative. *See Garrison*, 759 F.3d at 1015 n.20 (expressing "doubt that epidural steroid shots to the neck and lower back qualify as 'conservative' medical treatment"); *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017) (holding ALJ erred in characterizing facet and epidural injections in the neck and back and prescription pain medication as conservative treatment). The ALJ did not explain her reasoning and undersigned finds no support in the record for distinguishing Plaintiff's treatment from these authorities.

Symptom improvement with treatment could render this error harmless. "[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) (citations omitted); *see also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for purposes of determining eligibility for SSI benefits"). Here, the ALJ found that "[a]lthough [Plaintiff] has been prescribed and has taken appropriate medications for the alleged impairments, which weighs in her favor, the objective medical evidence shows that the medications have been relatively effective in controlling the claimant's symptoms." AR 45-46. She explained that Plaintiff reported her pain was "fairly well managed with hydrocodone," AR 46 (citing AR 650), and had good results with injections in September 2021 and May 2022. AR 45-46 (citing AR 595-96, 662, 833).

The conclusion that Plaintiff's symptoms were "fairly managed" with hydrocodone is based on a single treatment record dated August 3, 2022, by Susan Tipton, NP. Read in context, this record does not refute Plaintiff's symptom testimony because it is referring to her post-operative pain following the CornerLoc procedure on July 26, 2022, not her overall symptoms. *See Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("[A provider's] statements must be read in context of the overall diagnostic picture he draws."). The visit with Tipton was a follow up to that procedure and involved examinations of Plaintiff's surgical incisions. AR 650-51. The hydrocodone prescription was filled on July 29, 2022, three days after the procedure, and was prescribed for "postoperative pain." AR 649. In that same note, Plaintiff still reported symptoms from her medically determinable impairments, such as "consistent pain" exacerbated by standing, walking, reaching, and bending, and poor sleep due to the pain. *Id.* Tipton's physical exam showed Plaintiff's gait was "slowed and abnormal due to pain." AR 651.

The ALJ's finding of symptom improvement with injections is also unsupported by substantial evidence. The ALJ cited an October 2021 treatment note from Dr. Gangupantula stating Plaintiff had a "good result" with the injection on September 9, 2021 (AR 595-96), but in the next sentence cites treatment evidence showing Plaintiff denied any benefit from the same shot (AR 663, 833). The ALJ did not resolve or even acknowledge this inconsistency. Further,

the records indicating percentages of improvement with injections, *see* AR 662 and 833, do not show *sustained* relief. Plaintiff reported the symptom relief from the May 2023 injection "started to decline" after 2.5 weeks and Tipton authorized Plaintiff for the more invasive CornerLoc surgical procedure. AR 662-664. In the other record cited by the ALJ, a July 2023 treatment note, the provider still observed "significant gait disturbance that is wide-based and unsteady" and "consistent" pain made worse by standing, walking, reaching, and bending over. AR 832-33.

In sum, the ALJ's references to the record do not provide substantial evidence for her finding of symptom improvement with treatment. *See Ghanim*, 763 F.3d at 1164 (occasional signs of improvement do not undermine consistent impairments in the overall record); *Moreno v. Colvin*, 174 F. Supp. 3d 1112, 1118 (D. Ariz. 2016) (holding records indicating improvement in Plaintiff's back and neck pain symptoms did not constitute substantial evidence where record evidence indicated relief was not sustained.) This error, as well as the error in characterizing Plaintiffs medications and treatment as "conservative," was not harmless because it was a determining factor in the ALJ's non-disability finding.

### iii. Reported Daily Activities

Finally, the ALJ discounted Plaintiff's subjective symptom testimony in part because she "lives alone and is independent for basic activities of daily living," adding that Plaintiff is able to "prepare her own meals, do laundry, dust, wash dishes, walk, drive, ride in a car, shop, count change, handle a savings account, crochet, play video games, and socialize." *Id.* Plaintiff claims the ALJ mischaracterized Plaintiff's own statements, which showed her activities were quite limited. ECF No. 11 at 13. Defendant argues Plaintiff's ability to do daily activities undermines her allegations of difficulty lifting, standing, reaching, and using her hands. ECF No. 14 at 5.

An ALJ may consider a claimant's daily activities when evaluating the intensity and persistence of pain symptoms. "Only if the level of activity [is] inconsistent with Claimant's claimed limitations" do daily "activities have any bearing on Claimant's credibility." *Ferguson v. O'Malley*, 95 F.4th 1194, 1203 (9th Cir. 2024) (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)). The Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because

11

impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Id.* (quoting *Garrison*, 759 F.3d at 1016).

The ALJ did not explain how Plaintiff's daily activities are inconsistent with her alleged standing, sitting, and walking limitations. The record shows that although Plaintiff carries out these activities, she does so with significant limitations. For example, Plaintiff wrote in the function report cited by the ALJ that "shopping takes 2 hours so I can walk the store safely" and receives help from a friend. AR 287, 295. In the same report, Plaintiff states she can only do laundry, dusting, and dishes at her level without bending, AR 286, and her sitting and standing limits affect her ability to paint, crochet, and game for sustained periods. AR 288.

The Ninth Circuit has "repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability." *Orn*, 495 F.3d at 639 (quoting *Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir. 2001)). The ALJ's finding that Plaintiff can do her daily activities, without further explanation as to how those activities are inconsistent with her alleged limitations, does not satisfy the clear and convincing standard. Accordingly, the ALJ's rejection of Plaintiff's subjective symptom testimony based on her daily activities was reversible error.

**II.     The ALJ Did Not Err in Excluding Mental Limitations From the RFC**

Plaintiff next argues the ALJ failed to properly evaluate her mental limitations. ECF No. 11 at 14. At step 2, the ALJ found "no more than 'mild' limitations in the four "paragraph B" criteria: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. AR 41-42. Plaintiff alleges the ALJ erred in crafting an RFC without these mild mental limitations and not explaining why. ECF No. 11 at 15 (citing AR 43-47). This error was harmful because Plaintiff's "mental limitations likely precluded her from performing the jobs cited at step 5." *Id.* at 16. Defendant argues the ALJ reasonably evaluated the evidence and sufficiently explained her reasons for excluding mental limitations from the RFC. ECF No. 14 at 7-8.

Plaintiff relies on *Hutton v. Astrue*, where, in an unpublished decision, the Ninth Circuit

12

1  held that an ALJ erred by failing to consider the claimant's PTSD, even though non-severe, when
2  he assessed the RFC.  491 Fed. App'x 850 (9th Cir. 2012) (citing 20 C.F.R. § 404.1545(a)(2)
3  ("We will consider all of your medically determinable impairments of which we are aware,
4  including your medically determinable impairments that are not 'severe[.]'").)  The Court held
5  that while the ALJ was free to reject claimant's testimony as not credible, "there was no reason
6  for the ALJ to disregard his own finding that [claimant's] nonsevere PTSD caused some 'mild'
7  limitations in the areas of concentration, persistence, or pace." *Id.* at 851.  Plaintiff urges the
8  undersigned to follow the "[n]umerous courts in this Circuit [that] have followed *Hutton* and
9  found reversible error where the ALJ failed to include mild mental limitations found at step two
10 in the assessment of the claimant's RFC." ECF No. 11 at 16 (citing, *inter alia*, *Kari P. v. Saul*,
11 Case No. 19-cv-0956 JLB, 2020 WL 6889202, *8 (S.D. Cal. Nov. 23, 2020)).

        A common link between *Hutton* and its progeny is that, leading up to step 4, "the ALJ did not discuss or consider the mild limitation caused by Plaintiff's" mental impairments.  *See Kari P.*, 2020 WL 6889202, at *8.  "More recently, however, '[o]ther district courts have distinguished *Hutton*, ruling that if the ALJ (1) states that he/she considered whether the claimant's mild metal limitations would cause functional limitations and determined they would not; and (2) substantial evidence supports that determination, then the ALJ's decision must be affirmed on appeal." *Urzua v. Comm'r of Soc. Sec.*, No. 2:23-cv-2772 EFB, 2025 WL 565624, at *4 (E.D. Cal. Feb. 20, 2025) (quoting *Hilda V. A. v. Kijakazi*, No. 5:22-cv-1064 KES, 2023 WL 1107867, at *3 (C.D. Cal. Jan. 30, 2023) (collecting cases), *aff'd sub nom. Alexander v. O'Malley*, No. 23-55213, 2024 WL 612877 (9th Cir. Feb. 14, 2024)).

        This case fits squarely within the recent cases distinguishing *Hutton.*  Leading up to step 4, the ALJ expressly considered the mild mental limitations identified at step 2 but determined they did not merit inclusion in the RFC.  She wrote that the "the record does not reflect that the claimant is receiving any mental health treatment" and credited the respective medical opinions of Dr. Johnson-Schroetlin, Dr. Weiss, and Dr. Haroun as being "consistent with no severe mental impairment" due to their alignment with objective evidence showing "largely normal findings" and Plaintiff's "relatively intact activities," including the capacity to live alone.  AR 46-47.

1       Plaintiff argues that the respective mild limitation findings of Dr. Johnson-Schroetlin and Dr. Haroun should have been incorporated in the RFC, ECF No. 11 at 14, but the record more than adequately supports the ALJ's decision not to. While Dr. Johnson-Schroetlin found Plaintiff was "mildly limited due to depressive symptomology" in accepting instructions from supervisors, interacting with coworkers and the public, and dealing with the usual stresses of the work environment, she concluded the symptoms were "not chronic" and "may abate on [their] own within a one-year period." AR 526-527. Dr. Haroun reviewed Plaintiff's file and upheld the finding that her depression was "non-severe" based on "no psych treatment, no psych meds, no referrals for mental health treatment and no mental limitations with ADLs." AR 136-137.

      Moreover, Plaintiff does not address Defendant's argument regarding the Ninth Circuit's decision *Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2022). There, the ALJ found mild limitations in two of the four "paragraph B" criteria at step 4 but did not include them in the RFC. 32 F.4th at 794. The Ninth Circuit upheld the RFC, noting the claimant "does not identify any particular evidence that the ALJ failed to consider or explain why the record does not support the ALJ's findings regarding her mental functioning." *Id.* Here, Plaintiff similarly does not identify any evidence that the ALJ did not expressly discuss in her explanation for excluding mental limitations from the RFC. The undersigned finds no error in the ALJ's decision not to include Plaintiff's mild mental limitations in the RFC.

### III.  The Undersigned May Not Consider the Weimer Report

      Plaintiff's final argument is the Appeals Council did not properly evaluate a new report by chiropractor Dr. Weimer. ECF No. 11 at 17-19. Dr. Weimer's report is a one-page questionnaire dated May 8, 2024, some five months after the ALJ's decision. AR 856. Dr. Weimer found more severe limitations than the ALJ. For example, he wrote that in an 8-hour workday, Plaintiff can only sit for 2-4 hours and stand and/or walk 4-6 times in five-minute increments, and that she has been disabled "to this extent" since 2022. *Id.* Citing *Brewes v. Comm'r of Soc. Sec.*, 682 F.3d 1157 (9th Cir. 2012) ("*Brewes*"), Plaintiff argues the undersigned must consider this report in evaluating whether the ALJ's decision is supported by substantial evidence. ECF No. 11 at 17. Defendant does not dispute the report is part of the record per *Brewes* but argues remand is

14

1    unnecessary because substantial evidence still supports the ALJ's decision.  ECF No. 14 at 8-9.

2         The undersigned disagrees with both Parties that Dr. Weimer's report is part of the official

3    record pursuant to *Brewes*.  District Judge Thurston recently summarized the proper framework

4    for reviewing new evidence submitted for the first time to the Appeals Council as follows:

> The Ninth Circuit distinguishes between evidence the Appeals Council formally "considered" and evidence it merely "looked at" to determine whether the additional evidence was incorporated into the record.  "[W]hen a claimant submits evidence for the first time to the Appeals Council, which *considers* that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence." *Brewes*, 682 F.3d at 1159-60 (emphasis added).  In contrast, when the Appeals Council "only *looked at* the evidence, and determined it did not meet the [Social Security Regulations'] standard for consideration . . . the new evidence did not become part of the record, and [the court] may not consider it."  *Amor v. Berryhill*, 743 Fed. App'x 145, 146 (9th Cir. 2018) (emphasis added).

*Felix v. Bisignano*, No. 1:20-cv-1774 JLT BAM, 2025 WL 2731050, at *8 (E.D. Cal. Sept. 25, 2025).  Here, the Appeals Council wrote that the new evidence submitted after the ALJ's decision, which consisted of Dr. Weimer's report and a lumbar spine MRI report dated July 10, 2024,[2] "does not show a reasonable probability that it would change the outcome of the decision." AR 2.  As a result, the Appeals Council "did not exhibit this evidence."  *Id.*

The judges of this district have interpreted identical notice language to mean the Appeals Council did not "consider" the evidence.  *See*, *e.g.*, *Felix*, 2025 WL 2731050, at *9 (holding that the Appeals Council only "looked at" the evidence and declining to adopt magistrate judge's contrary finding); *Hensley v. Comm'r of Soc. Sec.*, No. 2:20-cv-1448 KJN, 2022 WL 891289, at *13 (E.D. Cal. Mar. 25, 2022) ("The fact that the Appeals Council stated the opinion would not likely change the outcome of the ALJ's decision does not dictate" a conclusion that it considered the evidence), *aff'd sub nom. Hensley v. Kijakazi*, No. 22-15796, 2023 WL 4700635 (9th Cir. July 24, 2023).  This interpretation is further supported by the relevant regulations, which state "[t]he Appeals Council will evaluate all additional evidence it receives*, but will only mark as an exhibit and make part of the official record"* evidence that it determines is "new, material, and relates to

---

[2] Plaintiff's motion does not challenge the Appeals Council's evaluation of the MRI report.

15

1  the period on or before the date of the hearing decision, and *there is a reasonable probability that*
2  *the additional evidence would change the outcome of the decision.*" 20 C.F.R. §§ 416.1476(b),
3  416.1470(a)(5) (emphasis added).[3]  Thus, because the Appeals Council only "looked at" the
4  Weimer report and did not exhibit it, the report is not part of the record and the undersigned "may
5  not consider" it when evaluating the ALJ's decision.  *See Amor*, 743 Fed.App'x at 146.
6        Even if the Weimer report was part of the official record, it would not, on its own, merit
7  remand.  Remand is appropriate only "if there is new evidence that is material," meaning "there is
8  a reasonable possibility that the new evidence would have changed the outcome."  *Bruton v.*
9  *Massanari*, 268 F.3d 824, 827 (9th Cir. 2001) (citation omitted); *see also* 20 C.F.R. §
10 416.1470(a)(5).  The undersigned agrees with Defendant that the one-page Weimer report is
11 similar to the "cursory physical assessment form" the plaintiff submitted for the first time to the
12 Appeals Council in *Hensley*, 2023 WL 4700635.  In that unpublished decision, the Ninth Circuit
13 held the form would not have disturbed the ALJ's non-disability finding because it "references no
14 objective evidence" and is contradicted by the same provider's treatment notes.  *Id.* at *1.
15       Dr. Weimer's report similarly does not cite any objective evidence to support its finding
16 of severe limitation.  Instead, it relies on undated observations, e.g., plaintiff "walks w/ cane,"
17 "cannot balance on 1 foot," and cannot lift her right foot when lying supine.  AR 856.  An "ALJ
18 need not accept the opinion of any physician, including a treating physician, if that opinion is
19 brief, conclusory, and inadequately supported by clinical findings."  *Thomas*, 278 F.3d at 957.
20 Further, because the observations are undated, the undersigned cannot determine whether they
21 apply to the period considered by the ALJ.  *See Brewes*, 682 F.3d at 1162 (stating the regulations
22 allow a claimant to "submit new and material evidence to the Appeals Council . . . so long as that

---

[3] The fact that Defendant filed Dr. Weimer's report as a supplement to the administrative record (see ECF No. 10) does not make it part of the official record.  The regulations state that the certified administrative record filed in federal court "will include . . . all additional evidence the Appeals Council received during the administrative review process, *including additional evidence that the Appeals Council received but did not exhibit or make part of the official record*.  20 C.F.R. § 416.1476(b) (emphasis added); *see also Hensley*, 2022 WL 891289, at *13 (holding that the physical inclusion of new evidence in the transcript transmitted to the Court "does not mean that the Appeals Council considered it and made it 'part of the administrative record.'").

evidence relates to the period on or before the ALJ's decision.") (citing 20 C.F.R. § 404.970(b)). Accordingly, the Appeals Council did not err in declining to consider the Weimer report.

## CONCLUSION

When a court reverses an ALJ's decision for error, the court "ordinarily must remand to the agency for further proceedings." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *see also Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"). Based on the above finding that the ALJ erred in discounting Plaintiff's subjective symptom testimony, the undersigned will recommend the matter be remanded to the agency for further proceedings.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment (ECF No. 11) be granted;

2. Defendant's cross-motion for summary judgment (ECF No. 13) be denied;

3. This matter be REMANDED to the Commissioner for further consideration consistent with this order; and

4. The Clerk of the Court enter judgment for Plaintiff and close this case upon the adoption of these findings and recommendations.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: December 23, 2025

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

17